IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIERRA SAMBOLIN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ETHOS VETERINARY HEALTH, LLC d/b/a Premier Veterinary Group,<br><br>*Defendant.* | Case No.: 22-cv-03276<br><br>Hon. Mary M. Rowland |

## PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
## IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

David Fish
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*
*Attorneys for Plaintiff and
Others Similarly Situated*

**I.     Introduction**

Plaintiff Sierra Sambolin filed this putative class action against Defendant Ethos Veterinary Health, LLC d/b/a Premier Veterinary Group ("Ethos") for allegedly unlawfully collecting, using, storing, and her biometric data (*i.e.* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Ethos utilized the fingerprints as part of a medication management system manufactured by Cubex, LLC that required biometric authentication before dispensing medicine.

The Parties reached a non-reversionary $295,000 class settlement for the 278 Settlement Class Members—a gross allocation of approximately $1,061 per person. This is a strong result for the Class as a whole and is structured to maximize the number of individuals who will receive a settlement payment: each Class Member will automatically be sent a payment unless they opt out; there is no requirement that they submit a claim form.

The settlement is fair, reasonable, adequate. It is also particularly timely because the Illinois Supreme Court has agreed to hear the case of *Mosby v. The Ingalls Mem'l Hosp*, 2022 Ill. App. (1st) 200822, which potentially will decide whether a medication management system in a hospital is exempt from BIPA's coverage.

As such, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order.

**II.    Procedural History**

On May 19, 2022, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Chancery Division, alleging that Defendant violated BIPA by requiring her and other employees to use a biometric medicine management system (like the one pictured here) as part of their jobs. (Dkt. No. 1-1).



Plaintiff alleged that Defendant violated BIPA by failing to do four things:

1) Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2) Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as required by BIPA;

3) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor

4) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

Following the parties' exchange of discovery, the Parties entered into settlement negotiations and were able to come to a mutually agreeable resolution of their claims.

### III. Summary of Settlement Terms (Ex. 1, Settlement Agreement)

#### A. The Proposed Settlement Class

The proposed Settlement Class includes a maximum total of 278 identified individuals who worked for Defendant during the class period and who used fingerscans in conjunction with using the Cubex system. The Class Representative seeks preliminary approval of a Settlement Class consisting of the following:

All individuals who, between May 19, 2017 and the date of preliminary approval (the "Class Period") used the Biometric System at Defendant's facilities within the state of Illinois and whose name appears on the Class List.

#### B. Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, ¶ 25)

While denying all liability and wrongdoing, Defendant has agreed to pay $295,000 ($1,061.15 per person based upon an estimated total Class Size of 278) to resolve the claims in

3

this case on a class action basis. The Gross Settlement Fund is the maximum amount Defendants shall be obligated to pay under the Settlement. The "Net Fund" is the Gross Settlement Fund minus the following deductions, approved Class Counsel fees and litigation costs; the Settlement Administrator's costs; and the Class Representative's Service Award. The Net Fund shall be distributed pro rata to Class Members.

After all deductions are made, Class Members are estimated to receive a check in the amount of $640. Unless they exclude themselves, all Class Members will automatically be sent a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate, *i.e.* people are more likely to cash a check that is from a current or former employer than send in a claim form.

### C. Uncashed Checks Will Be Distributed to a *Cy Pres* Recipient (Ex. 1, Settlement Agreement, ¶ 45)

Under the terms of the Settlement, the entire Gross Settlement Amount will be distributed and no portion of it shall revert to the Defendant. Class members will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to Electronic Frontier Foundation as a *cy pres* recipient.

### D. Release of Claims (Ex. 1, Settlement Agreement, ¶¶ 34-35 & § VII)

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed at Defendant, including by way of example, any claims arising out of or relating to Defendant's storage, collection, capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information.

The Class Members are ***not*** releasing claims against the manufacturer of the biometric system, Cubex, LLC, Cubex Financial Services, Creekridge Capital, Mitsubishi HC Capital

4

America, Inc. and their affiliates/related entities. (¶ 34) Cubex is the manufacturer of the biometric collection device and Creekridge and Mitsubishi were involved in financing the device for the Defendant. Plaintiffs retain the right to sue these entities.

      **E.**      **Settlement Administration (Ex. 1, Settlement Agreement, ¶ 38)**

The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator. The Settlement Administrator's costs are estimated at $8,000.

      **F.**      **Notice of Class Action Settlement (Ex. 1, Settlement Agreement, ¶ 57-58)**

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made, exclusion, or how to submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Award; and (6) the Final Approval Hearing details.

      **G.**      **Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 57-59)**

The Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address ("NCOS") database. As the Class Members are the Defendant's current and former employees, Class Counsel is confident the addresses will for the most part be accurate.

      **H.**      **Service Award (Ex. 1, Settlement Agreement, ¶ 74)**

Under the Settlement Agreement, Class Counsel will request that the Court award the Class Representative $7,500 as a Service Award for her work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, and recovering money for the Settlement Class. Class Counsel will file the request for the Service Award with their motion for attorney fees and costs, described below.

### I. Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 72-74)

Under the Settlement Agreement, Class Counsel may request that the Court award them one third of the Gross Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Fairness Hearing.

### IV. The Court Should Grant Preliminary Approval Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> Preliminary approval of the proposed settlement at an informal hearing; Dissemination of mailed and/or published notice of the settlement to all affected class members; and A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq*. With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### A. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representative pursued this case vigorously on behalf of a potential class. Over the past year, Class Counsel engaged in litigation. Through written discovery and further negotiated exchange of information, Class Counsel obtained relevant documents from Defendant for purposes of evaluating and resolving these claims. As a result of Class Counsel's and the Class Representative's sustained effort, the Parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

#### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

This Settlement here exceeds other approved BIPA class settlements. *See, e.g.*, *Marshall v. Lifetime Fitness, Inc*., 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring); *Taylor v. Sunrise Assisted Living,* 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA

7

settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.)(BIPA settlement of $400 per person with reversion); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC*, 2018 CH 2140 (Cir. Ct. Cook Cty.)(BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc.* 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496(Cir. Ct. Cook Cty.)(BIPA settlement of $500 per person); *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019)(per member BIPA allocation of between $768 and $1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020)(per member BIPA allocation of $800 per person); *Martinez v. Nando's Restaurant Group, Inc.*, 2019-cv-7012 (N.D. Ill. 2020)(per member BIPA allocation of $1,000).

The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Incagi. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement of 12.2% of damages, citing a study by Columbia University Law School determining that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (cites omitted).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation. There were several issues that warranted a resolution of this case.

First, there is a pending case before the Illinois Supreme Court, *Mosby v. Ingalls Memorial Hospital, et al* that involves a medicine management system. At issue in *Mosby* is the scope of the

so-called HIPPA and healthcare exemptions in BIPA. The Appellate Court's *Mosby* decision was favorable for BIPA-plaintiffs (2022 Ill. App. 200822), but the Supreme Court's decision to hear the case provides risk. While Plaintiff would argue *Mosby* is not applicable to a veterinarian practice, the Supreme Court's decision could impact the outcome of this case, or even result in Class Members getting nothing depending on what it holds. Second, there were some Class Members who had executed releases of liability which could have impacted their ability to participate in the case. Third, Plaintiff is not aware of any other litigation relating to the Cubex LLC technology and the litigation would have involved costly and conflicting expert testimony. Fourth, this case is relatively small in terms of the number of Class Members. Had the Class Representative been unwilling to continue to serve, it could have resulted in the case falling apart.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail. This is a comprehensive notice program that rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Class Members via check to their last known mailing address.

### c. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of 33.33% of the Gross Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement ¶ 72. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Settlement Agreement.

    d.  **Any Agreement required to be identified under Rule 23(e)(3)**

The Settlement Agreement is Exhibit 1 to this Motion. The Named Plaintiff also filed a claim before the Equal Employment Opportunity Commission against Defendant. She has also resolved that charge pursuant to a Confidential Settlement Agreement and General Release.

    e.  **The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

The Settlement treats Class Members equally by distributing awards from the Net Settlement Fund on a *pro rata* basis. Ex. 1, Settlement Agreement, ¶ 45. All employees who fall under the class definition will be sent a check to their last known address for their pro rata share of the net amount.

**B. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)**

    1.  **Certification Will Be Appropriate Under Rule 23(a)**

To obtain class certification, Plaintiff must demonstrate that his claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

    a.  **Numerosity**

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 278, Ex. 1, Settlement Agreement, ¶ 25, which satisfies numerosity.

### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendants collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendant's alleged use of a biometric system for its Illinois employees. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this

11

standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Class Representative alleges the same biometric claims as Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). Plaintiff assisted in any way that she was asked, engaging in many interviews and reviews of information with her attorneys.

### ii. Class Counsel is experienced and qualified

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Examples of recent BIPA class-wide settlements for Fish Potter Bolaños clients include: *Crumpton v. Octapharma Plasma*, 19-cv-8402 (N.D. Ill) ($9.9 million); *Devose v. Ron's Temporary Help Services, Inc.*, 2019L1022 (Cir. Ct. Will Cty)($5.375 million); *Labarre v. Ceridian HCM, Inc.*, 2019 CH 06489 (Cir. Ct. Cook Cty)($3.49 million); *Johnson v. Resthaven/Providence Life Servs.*, 2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Marsh v. CSL Plasma, Inc.* 19-cv-07606 ($9.9 million); *Philips v. Biolife* Plasma, 2020 CH 5758, (Cir. Ct. Cook Cnty.) ($5.98 million); *Davis v.*

12

*Heartland Emp. Servs.,* No. 19-cv-00680, dkt. 130 (N.D. Ill.) ($5.4 million); *Figueroa v. Kronos Incorporated,* 2019-CV-01306 ($15.2 million); *Martinez v. Nando's Peri Peri*, 2019CV07012 (N.D. Ill. 2020)($1.78 million); *O'Sullivan, et. al. v. WAM Holdings, Inc*., 2019-CH-11575 (Cir. Ct. Cook Cnty.) ($5.85 million); *Barnes v. Aryzta LLC*, 2017CH11312(Cook Cty. Cir. Ct.)($2.9 million); *Burlinski v. Top Golf USA, No. 19*-cv-*06700*, dkt. 103 (N.D. Ill.) ($2.6 million); *Diller v. Ryder Integrated Logistics*, 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud Rests., Inc*., 2019 CH 10620 (Cir. Ct. Cook Cnty.) ($2.1 million). In this case, Class Counsel demonstrated commitment to the Class by completing complex briefing and analysis along with written discovery.

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

#### a. Common questions predominate

Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the Defendants for which the law provides a remedy? The common question predominating in this

13

case is whether Defendants collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendants' liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits for recoveries possibly less than $1,000, plus attorneys' fees and costs.

### c. Plaintiff's Notice Program and Class Notice Form Merit Approval

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

Distribution of Notices directly to Settlement Class Members by U.S. mail is reasonable.

### III.    Conclusion

Because the Settlement is fair and provides significant monetary relief to the Settlement Class, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order, which will be submitted to the Court via its proposed order email address.

Respectfully submitted,

Dated: May 15, 2023 /s/ David Fish
One of Plaintiff's Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*Attorneys for Plaintiff and Others Similarly Situated*

**CERTIFICATE OF SERVICE**

    The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on May 15, 2023, which will serve a copy on all counsel of record.

                                         /s/ David Fish
                                         One of Plaintiff's Attorneys